PER CURIAM.
LThe state has charged defendant by bill of information with false swearing for purposes of violating public health or safety in violation of La.R.S. 14:126.1. The charge stemmed from an incident at a Kwik Stop service station in Zwolle, Louisiana, in which a Wildlife and Fisheries agent, off duty and in plain clothes, broke up a fight at the gas pumps between defendant and another person. While defendant’s antagonist fled the scene, the agent allegedly shoved a gun in defendant’s face and chest, and held him until the Zwolle police arrived. Defendant initially made a telephone complaint about the incident to *1190 the supervisor of the Wildlife and Fisheries agents in Sabine Parish and then sent a formal written complaint by certified mail on a form provided by the Zwolle Police Department. The statement did not purport to constitute a sworn affidavit, although by signing the printed form, defendant “affirm[ed] that all facts and statements contained herein are true and correct.” Investigation of the complaint, which encompassed interviews with the wildlife agent and other witnesses on the |2scene, led to defendant’s arrest for false swearing and to his formal charging by the Sabine Parish District Attorney’s Office with a violation of La.R.S. 14:126.1.
Defendant filed a motion to quash the bill of information on several grounds, including that the statute “is misleading and vague because it describes the crime as false swearing but does not appear to require that the prohibited false statement be made under oath.” The trial court denied the motion without written reasons but the Third Circuit set aside that ruling and ordered the prosecution quashed. State v. Williams, 09-993 (La.App. 3rd Cir.5/26/10), 38 So.3d 1180 (Ezell, J., dissenting). We granted the state’s application to review that decision and, for the following reasons, reverse and remand this case to the court of appeal for further consideration.
The crime of false swearing for purpose of violating public health or safety in violation of La.R.S. 14:126.1 appears in “Sub-part C. Perjury” of Part VII, “Offenses Affecting Organized Government,” in the Louisiana Criminal Code. The legislature added the statute to the Criminal Code in 1960 La. Acts 81 as part of a package of emergency acts signed into law by the governor on the same day during the social unrest accompanying the civil rights movement in the early 1960’s. See State v. Marshall, 424 So.2d 423, 427, n. 3 (La.App. 2nd Cir.1983) (“It is interesting to note that Section 126.1 was added to the Criminal Code ... as part of a package of legislation designed -to inhibit certain desegregation activities. Numerous additions and amendments to the Criminal Code were made, with severe penalties imposed for violation of the new and expanded crimes.”) (citing Donald H. Wollett, Race Relations, 21 La.L.Rev. 85 (1960-61) (“Apparently spurred by impending integration of the public schools in Orleans Parish and a rash of so-called ‘sit-in’ demonstrations, the 1960 regular session of the legislature passed 35 acts and proposed four constitutional amendments which bear, in one |?,way or another, on interracial relations.”) (footnote omitted)).[1] Although titled “false swearing for purpose of violating public health,” the text of La. R.S. 14:126.1 refers only to the making of a “false statement, report or allegation” of a crime for the purpose of disrupting or endangering the public welfare or to deprive any person of the rights, privileges, and immunities conferred by law.[2] While *1191 the crime of false swearing as defined in La.R.S. 14:125, which does require a false statement made under oath or an equivalent affirmation, is a one-year misdemean- or, the legislature made a violation of La. R.S. 14:126.1 a five-year felony offense, punishable with or without hard labor.
In his motion to quash, defendant contended that R.S. 14:126.1 is unconstitutionally vague to the extent that its title conflicts with its text, that it is used in a racially discriminatory manner, and that its heightened penalty provision ^constitutes cruel and unusual punishment. In his supporting memorandum, defendant argued that R.S. 14:126.1 is fatally vague, overly broad, and reaches protected speech. He also took the position that the vagueness, at least, could be cured by reading the statute in conjunction with La.R.S. 14:126 to find that La. R.S. 14:126.1 applies only to false statements made under oath, an interpretation that would effectively end the prosecution against him, as defendant did not “swear” to the handwritten statement he made on a form supplied by the Zwolle Police Department.
It has been previously noted that the title of La.R.S. 14:126.1, to the extent that it refers to “false swearing,” is “misleading ... because the statute does not require that the prohibited false statement be made under oath or affirmation.” Marshall, 424 So.2d at 427, n. 3. In the present case, the Third Circuit responded to that problem by reading the title of the statute into the body of the law because the court of appeal agreed with defendant that La.R.S. 14:126.1 “cannot be read in a vacuum and must be interpreted with the statutes that both precede and follow it,” in keeping with the general rule of statutory construction that, “all laws pertaining to the same subject matter must be interpreted in pari materia, or in reference to each other.” Williams, 09-993, p. 4, 38 So.3d at 1182 (citing La.Civ.Code art. 13; State v. Gutweiler, 06-2596 (La.4/8/08), 979 So.2d 469). The Third Circuit thus viewed La.R.S. 14:126.1 as part of a comprehensive body of statutory provisions “which deal with sworn speech,” id., 09-0993 at 3, 38 So.3d at 1182, all bound together by a common requirement that the offender make a statement under oath or an equivalent affirmation. See La.R.S. 14:123 (defining the crime of perjury); La.R.S. 14:124 (perjury as the making of a subsequent statement inconsistent with a statement made under oath or an equivalent affirmation); La.R.S. 14:125 (defining the crime of false swearing); La.R.S. 14:126 (false IsSwearing as the making of a subsequent statement inconsistent with a statement made under oath or an equivalent affirmation). In view of this comprehensive scheme dating back to 1942, the Third Circuit thought it clear that La.R.S. 14:126 and R.S. 14:126.1 “operate in tandem, and consequently, must be read in para mate-ria ” to require in the latter case that the offender make the alleged false statement *1192 under oath or an equivalent affirmation. Williams, 09-993 at 4, 38 So.3d at 1182. Thus, with respect to the present case, the state had “failed to charge a crime in the manner required by law because Defendant’s statement was not made under oath.” Id., 09-993 at 5, 38 So.3d at 1182 (footnote omitted); cf. State v. Legendre, 362 So.2d 570, 571 (La.1978) (although a motion to quash is ordinarily not a proper vehicle for raising defenses on the merits, “[i]t will not do to base an indictment for a serious offense ... upon an allegation of fact which cannot conceivably satisfy an essential element of the crime, and compel the accused to withstand the rigors of a jury trial with no expectation that a conviction can be supported by such an allegation.”).
We need not decide here whether by terms of the Third Circuit’s analysis, the state charged an offense under a valid statute because defendant, by signing the printed form supplied by the Zwolle Police Department, affirmed the truth of his statement. See La.C.Cr.P. art. 934(8) (“ ‘Oath’ includes affirmation.”). On a more fundamental level, the court of appeal erred in its analysis because La.R.S. 14:126.1 did not form part of the comprehensive set of criminal laws adopted by the legislature in the Criminal Code of 1942 (1942 La. Acts 43) and which set out the crimes of perjury and false swearing, including the parallel provisions that address the evidentiary import of the making of subsequent statements inconsistent with a statement made under oath or equivalent affirmation. The legislature added La. R.S. 14:126.1 to the Criminal Code 18 years later, as part of a singular package IfiOf emergency laws, and while the legislature “ ‘is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter,’ ” Williams, 09-993 at 4, 38 So.3d at 1182 (quoting Gutweiler, 06-2596 at 22, 979 So.2d at 484), the legislature also is presumed to mean what it plainly says in the text of a statute. Cat’s Meow v. City of New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198 (“When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. The starting point for interpretation of any statute is the language of the statute itself.”) (citations omitted); see Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (“[Cjanons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.... When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.”) (citations and internal quotation marks omitted).
As the state argues here, La.R.S. 14:126.1 plainly does not include any requirement that the offender make the false statement under oath or equivalent affirmation. Although the title of La.R.S. 14:126.1 has created some confusion, the title of an act is not part of a statute and can be used to interpret legislative intent only when the language of the statute leaves doubt as to its meaning. State v. Modere, 352 So.2d 666, 668 (La.1977).[3] *1193 Thus, although the court of appeal was 17correct as a general matter that “[w]here a part of an act is to be interpreted, it should be read in connection with the rest of the act and all other related laws on the same subject,” Theriot v. Midland Risk Ins. Co., 95-2895, p. 3 (La.5/20/97), 694 So.2d 184, 186 (on reh’g) (citations omitted), the Third Circuit focused too narrowly on immediate proximity of La.R.S. 14:126 and La.R.S. 14:126.1 and disregarded their timing and broader context of the latter’s origin, as well as the plain text of the 1960 legislation.
Louisiana criminal statutes must be “given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” La.R.S. 14:3. As originally enacted, La.R.S. 14:126 operated in tandem with La.R.S. 14:125 because both statutes, part of the same act, explicitly require that the offender make the false statement under oath or an equivalent affirmation. That requirement was not carried forward some 18 years later by the legislature when it enacted La.R.S. 14:126.1; nor did it appear over 50 years later when the legislature enacted La.R.S. 14:126.3, 1995 La. Acts 788, defining the crime of health care facility application fraud as the “knowing and intentional offering of a false written or oral statement in any employment application or in an effort to obtain employment as a caretaker in any nursing home ... hospital ... or other residential facility required to be licensed or operated under the laws of this state or established by the laws of this state.” When the legislature means to impose the requirement of oath or an equivalent affirmation it does so expressly as part of its plenary discretion to define crimes and prescribe punishments. See, e.g., La.R.S. 14:125.1 (false swearing in paternity cases “is the intentional making of a written or oral statement, known to [8be false, under sanction of oath or equivalent statement, where such oath or affirmation is given for use in any judicial proceeding filed by or on behalf of the state of Louisiana to establish paternity.”); compare La.R.S. 14:125.2 (prohibiting any person “to willfully and knowingly make a written or oral false statement concerning (1) biological paternity; or (2) surrender of parental rights pursuant to Title XI of the Louisiana Children’s Code”). Thus, nearly 50 years after enacting La.R.S. 14:126.1, when the legislature specifically addressed the filing of a false complaint against a law enforcement officer, including a wildlife agent, for the purpose of initiating an administrative action against the officer, 2006 La. Acts 287, and made the offense a six-month misdemeanor, it expressly imposed the requirement that the offender make the. false complaint “by affidavit under oath.” La. R.S. 14:133.5(A).
Removing the title of La.R.S. 14:126.1 as an interpretative guide to the language of the text cures any vagueness that may arise from using the term “false swearing” to describe the making or communicating of “false statements.” We therefore subscribe to the views, of the Second Circuit in Marshall and the Fifth Circuit in State v. Bentley, 96-0795, p. 7 (La.App. 5th Cir.3/25/97), 692 So.2d 1207, 1210, that La. R.S. 14:126.1 does not require that the offender make the alleged false statement under oath or equivalent affirmation. To this extent, resolving the split in the circuits over this question, we reverse the decision below and remand the case to the *1194 court of appeal to address the defendant’s other assignments of error.
COURT OF APPEAL DECISION REVERSED; CASE REMANDED.
JOHNSON, J., dissents.

. Both R.S. 14:126.1, and its complementary provision in La.R.S. 14:126.2, which proscribes the making of false statements to federal officials, including the F.B.I., about the deprivation or impending deprivation of rights, privileges or immunities by state or local authorities, went into effect immediately upon signature of the governor on June 22, 1960. Other emergency acts relating to the criminal law that went into effect at the same time ranged from 1960 La. Acts 73 (adding La.R.S. 14:79.1, entering into a common law marriage) and 1960 La. Acts 75 (enacting La.R.S. 14:79.2, conceiving and giving birth to two or more illegitimate children), to 1960 La. Acts 77 (amending and reenacting La.R.S. 14:59, relative to criminal mischief to include taking temporary possession of any part of a place of business after being ordered to leave).

. The statute reads in full as follows:
No person shall make a false statement, report or allegation concerning the commission of a crime for the purpose of violating, disrupting, interfering with or endan *1191 gering the public health or safety, or to deprive any person or persons of any right, privilege or immunity secured by the United States Constitution and laws or by the Louisiana Constitution and laws, or cause such false statement or report to be made to any official or agency of the state or any parish, city or political subdivision thereof, or to any judicial, executive or legislative body or subdivision thereof within this state, knowing or having reason to believe the same or any material part thereof to be false and with the intent to cause an investigation of or any other action to be taken as a result thereof.
Any person or persons convicted of violating the provisions of this Section shall be punished by imprisonment for not less than one year nor more than five years, with or without hard labor, or by a fine of not less than one hundred dollars nor more than one thousand dollars, or by both such fine and imprisonment.

. In Marshall, the Second Circuit observed that the statute appeared "inarticulately drafted” because it could "be questioned whether it was intended that the language 'for the purpose of violating ... the public health or safety' and 'to deprive any person ... of any right ... secured by the United States Constitution' refer[s] to the 'commission of a crime’ *1193 for that purpose or the making of 'a false statement' for that purpose.” Id., 424 So.2d at 427, n. 3. The Second Circuit chose the latter interpretation, which, in this respect, accorded with the title of La.R.S. 14:126.1 to prohibit false statements "for purpose of violating public health or safety.”