Judge Regina Bartholomew Woods
hln this case, a mother, Calendria Houston, appeals the involuntary termination of her parental rights to her minor children, A.S., Z.H., Z.H., and X.H.[1] For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
The Appellant, Calendria Houston (“Appellant”), is the mother of the following minor children: J.S. (born November 9, 2010), A.S. (born February 29, 2012), Z.H. and Z.H. (twins born February 26, 2014), and X. H. and K.H. (twins born December 7, 2014). On March 15, 2015, law enforcement officers responded to a call at the Appellant’s home where three-month old K.H. was found dead in the crib that she shared with her twin and the other five (5) children were found severely undernourished and developmental^ delayed; the officers suspected that Appellant and her husband, Xavier Houston (“Mr. Houston”) either refused or unreasonably failed to provide adequate care for the deceased child and the surviving minor children. The Louisiana Department of Child and Family Services (“DCFS”) received a report from law enforcement, which was later confirmed by a RDCFS investigator, that Appellant’s home was inadequate and in disarray, and that the children had severe diaper rashes and bruising. On that same date, pursuant to an Instanter Order, the remaining five (5) minor children were taken into the custody of the DCFS. On April 14, 2015, DCFS filed a petition for children in need of care for each of Appellant’s minor children. On April 15, 2015, Mr. Houston and Appellant attended a DCFS family team conference and signed their case plan with a goal of reunification of the family, with a concurrent goal of adoption.[2] Appellant worked her *182 case plan until May 27, 2015, when Appellant was arrested and charged with Second-Degree Murder of K.H., Cruelty to Juveniles, and Second-Degree Cruelty to Juveniles. Appellant’s bond was set at ls$350,000. On May 28, 2015, Appellant, without admitting the truth of the allegations contained within the petition for children in need of care, stipulated that her minor children were in need of care. On that same date, J.S. was placed into the custody of his biological father, Joshua Wheatley, and is not a part of this proceeding. Subsequently, Mr. Houston pled guilty and was sentenced to more than ten (10) years of imprisonment; Mr, Houston is not a party to this appeal.
Unable to fulfill the financial obligations of her bond, Appellant has remained in pre-adjudication custody since her arrest. Approximately ten (10) months after Appellant’s arrest and pre-trial detention, on March 23, 2016, DCFS filed a Petition for Termination of Parental Rights. In the petition, DCFS alleged, inter alia, the following:
(1)[Appellant] did engage in misconduct towards each child and the deceased sibling in a ■ manner that constitutes extreme abuse, cruel and inhuman treatment, and/or grossly negligent behavior below a reasonable standard of human decency by
(a) starvation by neglecting to feed the children adequately resulting in the children being severely underweight ..., and
(b)abuse or neglect which was chronic and life threatening and did result in the death of one child
* * *
(2)[Appellant] has failed to maintain stable and safe housing;
(3)[Appellant] has failed to make any ... parental contributions;
(4)[Appellant] has failed to comply with the visitation schedule with her children;
(5)[Appellant] has failed to participate in and successfully complete a qualified parenting program;
(6)[Appellant] has failed to. acknowledge •.and take responsibility for the extreme harm that her children suffered while in her care due to her neglect
|4On November 14, 2016, the trial court rendered a judgment, which terminated Appellant’s parental rights to her minor children. In a separate document, the trial court issued “Reasons for Judgment,” which set forth the grounds upon which *183 Appellant’s rights were terminated. It is from this judgment that Appellant appeals.
STANDARD OF REVIEW
It is well-settled that a trial court’s findings on factually-intense termination of parental rights issues — including a parent’s- compliance with a case plan, and whether termination is in the children’s best interests — are -reviéwed on appeal under a manifest error standard of review. State in Interest of T.M.P., 13-1006, p. 21 (La.App. 4 Cir. 10/23/13), 126 So.3d 741, 754.
DISCUSSION

Timeliness of Appeal

Although it is not raised as an assignment of error, DCFS argues that the subject matter jurisdiction lapsed and cannot be re-instated. The judgment terminating parental rights was signed on November 14, 2016. On November 15, 2016, the St. Bernard Parish Sheriffs Office “walked” the judgment to counsel for the Appellant. On December 5, 2016, counsel for Appellant filed a motion for appeal. DCFS moved the trial court to deny the motion for appeal as untimely. The trial court ruled that Appellant’s motion for appeal was premature. On December 12, 2016, the trial court mailed the judgment of termination of parental rights to | ¡^counsel for the State and the parents. On December 15, 2016, counsel for Appellant filed a Notice of Appeal.
DCFS asserts that the 25th Judicial District relies on the local custom of personal service through the St. Bernard Parish Sheriffs Office; thus DCFS asserts that the clock for timely filing of a Notice of Appeal begins at that moment. However, Article 332 of the Louisiana Children’s Code states, in pertinent part, that “appeals shall be taken within fifteen days from the mailing of the notice of the judgment,”[3] (Emphasis added). The “starting point for interpreting a statute is the language of the statute itself.” Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The legislature is presumed to mean what it plainly says in the text of a statute. Cat’s Meow v. City of New Orleans, 98-0601, p. 15 (La. 10/20/98), 720 So.2d 1186, 1198. “Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.” State v. Williams, 10-1514, p. 6 (La. 3/15/11), 60 So.3d 1189, 1192. “When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written.” Id. In the instant matter, the mailing of the judgment, not the custom or practice of the Sheriffs Office, marked the start of the time delay for filing a Notice of Appeal, Therefore, DCFS’s argument that subject matter ju *184 risdiction lapsed is without merit. We find the Notice of Appeal timely and as such, will consider the merits of Appellant’s appeal.

Assignments of Error

Appellant raises the following two (2) assignments of error:
1. Whether the trial court committed manifest error in terminating Appellant’s parental rights based on her pre-trial incarceration, which directly led to her failure to comply with her case plan.
2. Whether a parent’s pre-trial incarceration may be used as a material or substantial basis for termination of parental rights.
For ease of discussion, we address these inter-related assignments of error together.
“In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child.” State ex rel. M.S., 99-2190, p. 3 (La.App. 4 Cir. 6/23/00), 768 So.2d 628, 631. The United States Supreme Court has recognized that the “liberty interest.. .of parents in the care, custody, and control of them children is perhaps the oldest of the fundamental liberty interests recognized by this Court.” Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000); State ex rel. S.M.W., 00-3277, p. 12 (La. 2/21/01), 781 So.2d 1223, 1232. The court in State ex rel. J.A., 99-2905, p. 8-9 (La. 1/12/00), 752 So.2d 806, 810 states,
The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, Lassiter v. Department of Soc. Servs., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship, State in Interest of Delcuze, 407 So.2d 707 (La.1981). However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. Lehman v. Lycoming County Children’s Serv.'s Agency, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); see also State in the Interest of S.M., 98-0922 (La. 10/20/98), 719 So.2d 445, 452, In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. See, e.g., State in the Interest of S.M., 719 So.2d at 452; State in the Interest of A.E., 448 So.2d 183, 186 (La.App. 4 Cir.1984); State in the Interest of Driscoll, 410 So.2d 255, 258 (La.App. 4 Cir.1982).
The State’s parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child *185 for all legal relations with the parents to be terminated. La. Child. Code art. 1001. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens.
| «Title X of the Louisiana Children’s Code governs the involuntary termination of parental rights. At the time of the involuntary termination of Appellant’s parental rights, there were eight (8) statutory grounds for the involuntary termination of parental rights that are enumerated in La. Ch. C. art. 1015,[4] Although the *186 State need only establish one statutory ground, the trial court |flmust also find that termination is in the child’s best interest. State ex rel. SNW v. Mitchell, 01-2128, p. 9 (La. 11/28/01), 800 So.2d 809, 815 La. Ch. C. arts. 1015 and 1039. Moreover, “[g]iven the draconian nature of an involuntary termination proceeding, the state is required to prove the statutory ground on which it relies by clear and convincing evidence.” La. Ch. C. art. 1035 (A); Mitchell, 01-2128, p. 10 (La. 11/28/01), 800 So.2d 809, 816.
In summary, the involuntary termination of parental rights is a two-pronged inquiry. First, the State must prove by clear and convincing evidence the existence of at least one of the statutory grounds for termination under La. Ch. C. art. 1015. Second, after the ground for termination is found, the trial court must determine whether the termination is in the child’s best interests. La. Ch. C. art. 1039; State ex rel. L.B. v. G.B.B., 02-1715, pp. 5-6 (La, 12/4/02), 831 So.2d 918, 922. T.M.P., 13-1006, p. 25, 126 So.3d at 756.
| T (Appellant avers that the trial court committed manifest error when it terminated Appellant’s parental rights based upon her pre-adjudication custodial status. In asserting this argument, Appellant relies, not upon the judgment issued by the trial court, but instead, upon the Reasons for Judgment that the trial court issued.[5] In asserting this argument, Appellant overlooks the well-settled rule that the “district court’s oral or written reasons for judgment form no part of the judgment and that appellate courts’ review judgments, not reasons for judgment.” Wooley v. Lucksinger, 09-0571, p. 77 (La. 4/01/11), 61 So.3d 507, 572 (citing Bellard v. American Cent. Ins. Co., 07-1335 p. 25 (La. 4/18/08), 980 So.2d 654, 671). Furthermore, “judgments are often upheld on appeal for reasons different than those assigned by the district judges.” Id.
In the present case, DCFS presented the trial court with six (6) different bases upon which to terminate the parental rights of Appellant. During the termination proceedings; the trial court was presented with a plethora of evidence, which proved, by a clear and convincing standard, that Appellant’s parental rights should be terminated. Further, DCFS also presented the trial court with compelling evidence showing that termination was in the best interest of the children.
*187 In As Appellant correctly asserts, DCFS sought to terminate Appellant’s parental rights based on her non-compliance with the case plan and based upon Appellant’s abandonment of the children, due to her pre-adjudication custodial status, as a result of her failure to make the $350,000 bond.[6] However, Appellant overlooks the fact that DCFS also sought to terminate her parental rights based upon her misconduct toward the children that constituted extreme abuse and cruel and inhuman treatment. In fact, the record is replete with evidence showing that the third basis, alone, was sufficient to terminate Appellant’s parental rights. On the date that the minor children were removed from Appellant’s home, the children were observed to have severe diaper rashes, with raw skin that required prescription medication for treatment, as well as, marks and bruises on their bodies indicative of physical abuse. The youngest child, X.H., was hospitalized for failure to thrive. Also, Appellant’s home was observed in disarray with dirty dishes in the sink, trash cans overflowing, cluttered counter tops, children’s writings on the walls, and a stench of urine, despite the absence of pets in the home.
Accordingly, we do not find that, based upon the clear and convincing evidence presented, the trial court erred in terminating Appellant’s parental rights. We further find that the trial court properly considered the best interest of the children in terminating the parental rights. In fact, evidence was presented that 112since their placement in foster homes, the minor children have begun to thrive developmental^ and emotionally. Although she initially appeared to have laeked food and nutrition, A.S. is no longer anxious about food and is well-adjusted with her foster family. Since entering foster care, Z.H. and Z.H. have received the immunizations that they lacked, gained adequate weight, recovered from their severe diaper rashes, met developmental milestones such as crawling and standing, and have been examined and treated by an ENT, Neurologist, and Orthopedist. Upon entering foster care, X.H. was diagnosed with failure to thrive as a direct result of neglect; he has since been released from the hospital, received the immunizations that he lacked, gained adequate weight, and received medical treatment to address issues with his breathing. All of the aforementioned support the trial court’s determination that the termination of Appellant’s parental rights was in the children’s best interest.
DECREE
For the aforementioned reasons, we affirm the judgment of the trial court terminating the parental rights of Ms. Houston.
AFFIRMED

. In this opinion, the initials, rather than the full names, of the minor children are used to protect and maintain the privacy of the minor children involved in this proceeding. See Uniform Rules, Courts of Appeal, Rule 5-1 and Rule 5-2.

. According to a report by DCFS, the case plan for Mr. Houston and Appellant was as follows:
1. Mr. and Mrs. Houston will maintain safe and stable housing that will meet their children's needs. They will provide consistent supervision in the home for the children. The home will be clean, free of hazardous items, have running water and electricity. They will ensure they are available to meet with the agency worker monthly in the home.
2. Mr. and Mrs. Houston will maintain contact with the agency worker. They will notify the worker of any changes in their circumstances such as change of address, phone number, and employment/financial resources.
3. The agency worker will keep Mr. and Mrs. Houston abreast of their children's progress or lack thereof.
4. Mr. and Mrs. Houston will contribute to the cost of care of their children while in foster care. They will pay $25.00 per child totaling $125 monthly to Parental Contribution, P.O. Box 3318, Baton Rouge, Louisiana 70821 in the form a money order. They will include the children’s Social Security number and date of birth. They will provide proof of payment to the agency worker.
5. Mr. and Mrs. Houston will complete a mental health assessment. They will follow all the recommendations of the assessment and participate in any further services deemed necessary. They will sign a consent to release information form so that the worker can maintain contact with the mental health provider.
6. Mr. and Mrs. Houston will complete a substance abuse assessment. They will be open and honest with the evaluator. They will sign a consent to release information *182 form so that the worker can communicate with the evaluator. They will follow all recommendations, of the assessment.
7.Mr. and Mrs. Houston will participate in a domestic violence program until the completion of the program, They will demonstrate the knowledge learned in the .program. They will not have any other involvement with law enforcement due to domestic violence disputes. Worker will maintain contact with the provider. They will sign a consent to release information form for the program.
8. Mr, and Mrs. Houston will attend all FTCs, visits, court hearings, and other appointments in regards-to their children in order to remain up to date on their children's progress,
9. Mr. and Mrs. Houston will be referred to the Tulane Parenting Education Program, They will participate in the services the program provides until the completion of the program. Worker will maintain contact with the program to determine their progress/lack thereof.

. Article 332 of the Louisiana Children’s Code states:
A. Except as otherwise provided within a particular Tide of this Code, appeals shall be taken within fifteen days from the mailing of notice of the judgment. However, if a timely application for a new trial is made pursuant to Paragraph C, the delay for appeal commences to run from the date of the mailing of notice of denial of the new trial motion.
B. Notice of judgment, including notice of orders or judgments taken under advisement, shall be as provided in Code of Civil Procedure Article 1913.
C.After judgment is signed, a party may make a written request for a motion for new trial on any ground provided by law. The delay for applying for a new trial is three days, exclusive of holidays, and shall commence to run from the mailing of notice of judgment. A motion for new trial shall be decided expeditiously and within seven days from the date of submission for decision.

. The version of La. Ch. C. art. 1015 in effect at the time of the involuntary termination of Appellant’s parental rights states:
The grounds for termination of parental rights are:
(1) Conviction of murder of the child’s other parent.
(2) Unjustified intentional killing of the child’s other parent.
(3) Misconduct of the parent toward this child or any other child of the parent or any other child which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
(a) Murder.
(b) Unjustified intentional killing.
(c) Aggravated crime against nature as defined by R.S. 14:89.1(A)(2).
(d) Rape.
(e) Sodomy.
(f) Torture.
(g) Starvation.
(h) A felony that has resulted in serious bodily injury.
(i) Abuse or neglect which is chronic, life threatening, or results in gravely disabling physical or psychological injury or disfigurement.
(j) Abuse or neglect after the child is returned to the parent’s care and custody while under department supervision, when the child had previously been removed for his safety from the parent pursuant to a disposition judgment in a child in need of care proceeding.
(k) The parent’s parental rights to one or more of the child’s siblings have been terminated due to neglect or abuse, prior attempts to rehabilitate the parent have been unsuccessful, and the court has determined pursuant to Article 672.1, that current attempts to reunite the family are not required.
(l) Sexual exploitation or abuse, which shall include, but is not limited to acts which are prohibited by R.S. 14:43.1, 43.2, 46.3, 80, 81, 81.1, 81.2, 82.1(A)(2), 89, and 89.1.
(m) Human trafficking when sentenced pursuant to the provisions of R.S. 14:46.2(B)(2) or (3).
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child’s parent continue to be unknown.
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months, (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering *186 the child's age and his need for a safe, stable, and permanent home.
(6) The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plán for the appropriate care of the child other than foster care.
(7) The relinquishment of an infant pursuant to Chapter 13 of Tide XI of this Code.
(8) The commission of a sex offense as definéd in R.S. 15:541 by the natural parent which resulted in the conception of the child.

. The trial court issued a judgment, which simply stated that “Considering the testimony, evidence, law and argument of counsel, ... the Petition to Terminate the Parental ■Rights of [Appellant] is GRANTED.” When it issued its Reasons for Judgment, the trial court reiterated the multiple bases upon which DCFS sought to terminate Appellant’s parental rights. The trial court further stated that DCFS met its evidentiary burden by clear and convincing evidence and found that termination was in the best interest of the children, Additionally, the trial court referenced that Appellant had not inquired about the children arid had contributed nothing to their support.

. This court takes no position regarding whether it was legally proper or improper for DCFS to seek termination based on Appellant’s failure to provide support to the children and failure to maintain communication with the children while she remains in Parish custody, unable to post a bond, in a pre-adjudicative state. There was clear and convincing evidence to terminate Appellant’s parental rights on another basis, and the law is clear that termination can be based upon one ground listed in La. Ch.C. art. 1015, independent of the other bases.