| STATE OF LOUISIANA IN THE INTEREST OF J.V.I. AND G.V.I. | * | NO. 2023-CA-0557 |
|---|---|---|
| | * | COURT OF APPEAL |
| | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 26-006-J, DIVISION "B"
Honorable Jeanne Nunez Juneau, Judge
\* \* \* \* \* \*
**Judge Tiffany Gautier Chase**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge Tiffany Gautier Chase)

Annette Fuller Roach
ROACH & ROACH, APLC
2740 Rue de Jardin, Suite 400
Lake Charles, LA 70605

    COUNSEL FOR APPELLANT

Katherine Dowling
DEPARTMENT OF CHILDREN AND FAMILY SERVICES
1450 Poydras Street, Suite 1600
New Orleans, LA 70112

Mary M. McMillan
SOUTHEAST LOUISIANA LEGAL SERVICES
1340 Poydras Street, Suite 600
New Orleans, LA 70112

Sarah Stone
PRO BONO PROJECT
935 Gravier Street, Suite 1340
New Orleans, LA 70112

    COUNSEL FOR APPELLEES

AFFIRMED
NOVEMBER 13, 2023

*TGC*
*RLB*
*PAB*

This is an appeal of the trial court's June 22, 2023 judgment terminating the parental rights of D.Y.V.R., the mother of G.V.I. and J.V.I. (hereinafter collectively "the children") and certifying the children eligible for adoption.[1] After consideration of the record before this Court and applicable law, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

D.Y.V.R. is the mother of G.V.I. and J.V.I.[2] On January 8, 2021, the Department of Family and Child Services (hereinafter "DCFS") filed an affidavit in support of an Instanter Order on behalf of the children. The affidavit states that the children were in need of care based upon the following allegations: the children's father, H.I.R., inappropriately touched his thirteen year old relative; H.I.R. was arrested and charged with the molestation of a juvenile; the children's family members were told of the abuse and did not believe the thirteen year old relative; the children's older brother inappropriately touched them; and the

---

[1] We have used the initials of the parties to protect and maintain the privacy of the children involved in this proceeding. *See* Rule 5-1 and Rule 5-2, Uniform Rules, Louisiana Courts of Appeal.

[2] G.V.I. and J.V.I. are seven (7) and six (6) years old, respectively, and are the children of D.Y.V.R. and H.I.R.

1

whereabouts of the children's mother, D.Y.V.R., were unknown.[3] On that same day, the trial court placed the children into the temporary custody of DCFS.

Following multiple continued custody hearings, it was determined that D.Y.V.R. was living in the Dominican Republic. After several failed attempts to return the children to the Dominican Republic and into the care of family members and friends, the State of Louisiana (hereinafter "the State") filed a petition declaring the children in need of care on January 26, 2021. D.Y.V.R. answered the petition denying all allegations. The trial court placed the children into the temporary custody of DCFS on March 23, 2021.

The State later amended its petition alleging the children were in need of care based on: (1) H.I.R's incarceration and prosecution for the first degree rape of his thirteen year old relative; (2) the children's older brother being incarcerated and prosecuted for the first degree rape of G.V.I. and J.V.I.; (3) D.Y.V.R. being investigated for having possible knowledge of the children being sexually abused by their brother and father; and (4) the St. Bernard Sheriff's Department's possession of an audio recording where D.Y.V.R. states that she does not believe her children were sexually abused.

On July 21, 2021, the trial court held a hearing and adjudicated the children in need of care. The trial court also ordered the children to remain in DCFS' custody under the terms and conditions of the case plan set forth in the DCFS report. The case plan indicated that the children were enrolled in school and in overall good health. The initial placement of the children was with a foster family, but the goal of the initial case plan was for reunification of the children with their

---

[3] Throughout the record, the children's father is referred to as both H.R.I. and H.I.R. However, the judgment terminating the parental rights of the children's mother and father states the father's name as H.I.R. Thus, this opinion will address the father as H.I.R.

mother. To accomplish that goal, D.Y.V.R. was required to: (1) attend all scheduled family visits, court hearings, and agency meetings; (2) obtain and maintain suitable housing for the children; (3) pay $25.00 per child in monthly contributions to support her children in foster care; (4) maintain a legitimate income to support her children; (5) complete a psychological evaluation and follow all recommendations; and (6) inform DCFS of her whereabouts. The DCFS case plan also included a visitation contract which provided for phone visits, between D.Y.V.R. and the children, every Monday for one hour.

A permanency hearing occurred on March 9, 2022 at which D.Y.V.R. and H.I.R were present.[4] The State moved to modify the case plan from reunification of the children with D.Y.V.R. to termination of her parental rights which would certify the children eligible for adoption. G.V.I. and J.V.I. joined the State's motion while D.Y.V.R. and H.I.R. objected to the modification. After hearing the testimony of the DCFS case worker and the children's foster mom, the trial court found that D.Y.V.R. was in minimal compliance with the case plan and approved the modification of the case plan. However, the trial court noted that D.Y.V.R. could continue to work towards the original case plan for reunification for a six month period.

On February 8, 2023, DCFS filed a petition to terminate the parental rights of D.Y.V.R. and H.I.R. The petition alleges that D.Y.V.R. failed to provide significant contributions and maintain significant contact with her children for six months. The petition asserts that D.Y.V.R.'s parental rights should be terminated

---

[4] The permanency hearing was originally set to occur on February 23, 2022. Due to a conflict, the parties and trial court agreed to reset the matter to March 9, 2022.

as she failed to comply with the reunification case plan. D.Y.V.R. timely answered the petition with a general denial of all allegations.

The termination hearing was held over two dates: May 17, 2023 and May 24, 2023. At the hearings, the trial court heard testimony from Brandis White (hereinafter "Ms. White"), the DCFS case worker for the family; Maria Casati (hereinafter "Ms. Casati"), an expert witness in social work with the Tulane Parenting Education Program (hereinafter "T-PEP"); D.Y.V.R.; Michael Pichon (hereinafter "Mr. Pichon"), a CASA volunteer appointed to the case in March 2021; and the children's foster parents.

After reviewing the evidence and testimony in its entirety, on June 22, 2023, the trial court rendered judgment terminating the parental rights of D.Y.V.R. and H.I.R.[5] In its judgment, the trial court also declared the children eligible for adoption. This appeal by D.Y.V.R. followed.

## STANDARD OF REVIEW

This Court reviews a trial court's finding on the termination of parental rights under a manifest error standard. *State in the Interest of A.S.*, 2017-0028, p. 4 (La.App. 4 Cir. 5/10/17), 220 So.3d 179, 183. This Court reviews "both prongs of the trial court's determination—whether the statutory grounds for termination have been established and whether termination of parental rights is in the best interest of the child—under the manifest error standard." *State in the Interest of E.R.,* 2022-0754, p. 4 (La.App. 4 Cir. 2/7/23), 357 So.3d 892, 895, *writ denied*, 2023-00346 (La. 4/12/23), 359 So.3d 24.

---

[5] The trial court's June 22, 2023 judgment terminated the parental rights of D.Y.V.R and H.I.R. However, only D.Y.V.R. appeals the trial court's June 22, 2023 judgment. Thus, this appeal involves only D.Y.V.R.'s challenge of the trial court's termination of her parental rights and certification of the children as eligible for adoption.

## TIMELINESS OF APPEAL

Prior to addressing the merits of D.Y.V.R.'s appeal, we must consider whether this Court has jurisdiction over this appeal. J.V.I. maintains that this Court lacks subject matter jurisdiction. The judgment terminating D.Y.V.R.'s parental rights was signed on June 22, 2023. J.V.I.'s brief before this Court indicates that the St. Bernard Parish Sheriff's Department "served" the judgment to counsel for D.Y.V.R. on June 23, 2023, which J.V.I. maintains started the clock to timely file a notice of appeal. Thus, J.V.I. asserts that D.Y.V.R.'s filing of notice of appeal on July 21, 2023, is untimely pursuant to La. Ch.C. art. 332.

La. Ch.C. art. 332 provides, in pertinent part that, "appeals shall be taken within fifteen days from mailing of the notice of judgment." "The starting point for interpreting a statue is the language of the statute itself." *State in the Interest of A.S.*, 2017-0028, p. 5, 220 So.3d at 183 (citation omitted). "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says...." *State v. Williams*, 2010-1514, p. 6 (La. 3/15/11), 60 So.3d 1189, 1192 (citations omitted). "When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written." *Id.* (quoting *Cat's Meow v. City of New Orleans*, 1998-0601, p. 15 (La. 10/20/98), 720 So.2d 1186, 1198).

We further recognize the fundamental principle that an appeal should not be dismissed unless the reason for doing so is free from doubt. *See Fraternal Order of Police v. City of New Orleans*, 2002-1801, p. 2 (La. 11/8/02), 831 So.2d 897, 899 (citation omitted). Appeals are favored and "in the absence of the clerk's certificate showing the date of the mailing of the judgment and to whom it was mailed, doubt should be resolved in favor of the right to appeal." *State v. Fin Cas. & Sur.*, 2017-

5

1014, p. 7 (La.App. 4 Cir. 11/7/18), 318 So.3d 713, 717 (quoting *Garco, Inc. v. Rob's Cleaning & Powerwash, Inc.*, 2008-1249, p. 3 (La.App. 4 Cir. 4/22/09), 12 So.3d 386, 388) (citation omitted); *See State in the Interest of K.B.*, 2023-0409, p. 13 (La.App. 4 Cir. 9/26/23), ___So.3d___, 2023 WL 6226289, *7.

The record before this Court did not initially contain a notice of signing of judgment. However, the record was supplemented with a notice of signing of judgment indicating that a judgment was mailed on October 13, 2023. The trial court failed to initially attach a notice of signing of judgment to the June 22, 2023 judgment. Our Supreme Court has determined that an appeal shall not be dismissed for a mere technicality. *See Fraternal Order of Police*, 2002-1801, p. 3, 831 So.2d at 899 (citation omitted). The St. Bernard Sheriff's Department's "service" on June 23, 2023 is insufficient to start the time delays for the filing of a notice of appeal pursuant to La. Ch.C. art. 332. *See State in the Interest of A.S.,* 2017-0028, p. 6, 220 So.3d at 183 (finding that the St. Bernard Sheriff's Office and its custom of walking a judgment to counsel is insufficient to start the time of delay for the filing of notice of appeal). Thus, we find the notice of appeal timely and will consider the merits of D.Y.V.R.'s appeal.

## **DISCUSSION**

On appeal, D.Y.V.R. asserts the following three assignments of error: (1) the trial court erroneously terminated her parental rights as she had completed her case plan; (2) DCFS failed to show by, clear and convincing evidence, that the termination of D.Y.V.R.'s parental rights is in the best interest of the children; and (3) DCFS failed to make reasonable efforts to reunite D.Y.V.R. with the children. We find that D.Y.V.R.'s first and second assignments of error pertain to the

6

sufficiency of evidence presented at trial. For ease of discussion, we will address the sufficiency of evidence first.

## Sufficiency of Evidence

D.Y.V.R. maintains that DCFS failed to prove, by clear and convincing evidence, that the termination of her parental rights were in the best interest of the children. She asserts that she properly completed her case plan. In cases involving the involuntary termination of parental rights, the two interests are (1) the rights of the parents and (2) the rights of the child. Our Supreme Court has emphasized the importance of these interests:

> The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, *Lassiter v. Department of Soc. Servs.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship, *State in Interest of Delcuze,* 407 So.2d 707 (La.1981). However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

> The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated.

*State ex rel. J.A.*, 1999-2905, pp. 7-9 (La. 1/12/00), 752 So.2d 806, 810-11 (internal citations omitted).

The termination of the legal relationship between a child and its natural parent "is one of the most drastic actions the state can take against its citizens." *State in the Interest of A.L.D.*, 2018-1271, p. 4 (La. 1/30/19), 263 So.3d 860, 863. "[T]he primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven." *State ex rel. J.A.*, 1999-2905, p. 9, 752 So.2d at 811.

Title X of Louisiana's Children Code governs the involuntary termination of parental rights and the certification of children for adoption. The purpose in instituting the involuntary termination of parental rights is to provide protection to a child whose parent is unwilling or unable to provide adequate care for the child's welfare and needs and to achieve stability and permanence for the child. *See* La. Ch.C. art. 1001; *State ex rel J.A.,* 1999-2905, p. 8, 752 So.2d at 811. DCFS may pursue the termination of parental rights pursuant to La. Ch.C. art. 1004, which provides in pertinent part:

> The department may petition for the termination of parental rights of the parent of the child when any of the following apply:
>
> > The child has been placed in the custody of the state and termination is authorized by Article 1015(6).
> > The child is in foster care because the parent is incarcerated and termination is authorized by Article 1015(7).

La. Ch.C. art. 1004(D)(4-5). The petition must allege at least one of the statutory grounds for involuntary termination of parental rights provided in La. Ch.C. art. 1015. *State in the Interest of E.R.*, 2022-0754, p. 5, 357 So.3d at 896. The process for terminating a parent's rights is a two-pronged inquiry which requires (1) DCFS establish each element of at least one statutory ground for termination by clear and

convincing evidence; and (2) if the trial court finds grounds for termination have been established, the trial court must then determine the best interests of the child. *See* La. Ch.C. art. 1035; *State in the Interest of E.R.,* 2022-0754, p. 6, 357 So.3d at 896. The best interest of the child consideration shall include the children's attachment to their current caretakers. *See* La. Ch.C. art. 1037(B).[6] With these principles in mind, we turn to the trial court's determination of the two-prong inquiry required to terminate parental rights.

DCFS filed its petition to terminate D.Y.V.R.'s parental rights pursuant to La. Ch.C. art. 1015(5) and (6) which provides the grounds for the termination of parental rights. The article provide in pertinent part;

> (5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
>> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>>
>> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
>
> (6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or

---

[6] If the trial court finds that the statutory ground(s) for parental termination have been proven by clear and convincing evidence and that the termination is in the best interest of the child, the trial court "shall order for the termination of parental rights against whom the allegations are proven." *See* La. Ch.C. Art. 1037(B). The trial court must also enter written findings on both issues. *See* La. Ch.C. art 1037.

conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

La. Ch.C. art. 1015(5)(b-c) and (6).[7] DCFS sought to terminate D.Y.V.R.'s parental rights based upon her non-compliance with the case plan. Specifically, DCFS alleged that D.Y.V.R. lacked improvement in addressing the children's sexual abuse and D.Y.V.R. failed to show a substantial change in complying with the case plan. At the time of DCFS' filing of the petition for termination of parental rights, the children had been in DCFS' custody, with a certified foster family, for twenty-six months.

The trial court heard from several witnesses at the termination hearings. Ms. White, the DCFS case worker, testified that D.Y.V.R. began providing limited parental child support in August 2022, but failed to provide other basic necessities for the children. According to Ms. White's testimony, D.Y.V.R. also failed to provide evidence of sufficient income and testified that D.Y.V.R. sent photos of her home in Tennessee, but DCFS had no way to verify if D.Y.V.R. actually resided in the home. Ms. White concluded that D.Y.V.R. failed to prove she had sufficient living conditions, did not comply with the reunification case plan set forth by DCFS, and had not seen the children in person for over six months.

Ms. Casati, an expert in social work, testified to various matters including D.Y.V.R.'s failure to complete the case plan, D.Y.V.R's inability to address the children's sexual abuse, and the children's struggles with sexual abuse. According to Ms. Casati, D.Y.V.R. failed to complete the parenting education program through T-PEP and stated that she referred D.Y.V.R. to individual psychotherapy

---

[7] La. Ch.C. art. 1015 was recently revised in Louisiana's 2023 Legislative Session and went into effect on June 9, 2023. However, the trial in this matter occurred in May 2023, thus the trial court properly applied the version of La. Ch.C. art. 1015 enacted by Acts 2018, No. 202, § 6 effective on August 1, 2018.

due to her increased symptoms of anxiety and depression, which D.Y.V.R. declined.[8] Ms. Casati testified that D.Y.V.R. had informed her that H.I.R. was abusive and jealous, and that his behavior led to D.Y.V.R. moving out of his home in the Dominican Republic. Ms. Casati believed that D.Y.V.R failed to exercise good judgment in allowing her children to the travel alone to the United States with H.I.R. After working with D.Y.V.R. for two years, Ms. Casati concluded that D.Y.V.R. failed to make substantial progress in understanding or acknowledging the children's experiences with sexual abuse and found that placing the children back into the care of D.Y.V.R. would place them in imminent harm.

Ms. Casati testified that the children attended therapy for post-traumatic stress disorders (hereinafter "PTSD") as they both endured serious abuse while living with H.I.R. The children recounted multiple forms of sexual abuse by family members while living with H.I.R. She informed the trial court that the children experienced nightmares, avoidance, and increased irritability as a result of their PTSD.

The trial court also heard testimony from Mr. Pichon, the CASA volunteer. Mr. Pichon testified that the children called their foster parents "mom" and "dad." He has observed a positive and stable bond between the children and their foster parents. Mr. Pichon stated that he believed the foster parents have the capacity to provide a safe and stable environment for the children; thus recommending the children be deemed eligible for adoption. Further, the foster parents have ensured that the children have undergone therapy which has improved their PTSD symptoms.

---

[8] According to Ms. Casati, D.Y.V.R. failed to take to individual therapy session seriously and only went to one appointment.

D.Y.V.R. testified that she works in the Dominican Republic and owns her own business. She comes to the United States for court hearings but rarely stays in Tennessee as she has another young child in the Dominican Republic. When asked about her mental health and psychological treatment, she testified that she attended one telehealth visit in January 2023. D.Y.V.R. maintains she had no intention of permanently abandoning her children and believed that she completed the case plan to the best of her ability.

A review of the record indicates that D.Y.V.R. failed to comply with the case plan. Ms. White's testimony was that D.Y.V.R. had not seen her children, in person, for over a six month period and that D.Y.V.R. failed to provide evidence of sufficient income and housing. D.Y.V.R's continued refusal to seek treatment to address her symptoms of depression and anxiety are also indicators of her failure to comply with DCFS' case plan. Expert testimony reveals that D.Y.V.R. has shown instances of impaired judgment; is unable to determine the difference between safety and danger; has failed to show significant improvement in her ability to make better decisions; and is incapable of exercising her parental responsibilities without exposing the children to serious harm. *See* La. Ch.C. art. 1036(D)(1) (providing that based upon an expert opinion, established upon a pattern of behavior, it can be determined that a parent lacks the reasonable expectation of significant improvement in developing parental responsibilities to protect a child from substantial risk of serious harm).

The cumulative testimony of the witnesses is that D.Y.V.R. has failed to demonstrate a sufficient change in her behavior which would justify reunification with the children. *See State in the Interest of C.M.*, 2021-0353, p. 10 (La.App. 4 Cir. 8/4/21), 325 So.3d 1148, 1155 (holding that in order to prevent the termination

of parental rights, a parent must demonstrate a substantial change or modification of behavior that resulted in the State's removal of the child from the parent's home). We therefore find that the elements of the statutory grounds for termination of parental rights under La. Ch.C. art. 1015(5) and (6) were proven by clear and convincing evidence. Accordingly, we find no manifest error in the trial court's conclusion that DCFS established the statutory grounds for the termination of D.Y.V.R.'s parental rights.

*Best Interest of The Children*

The trial court found that the termination of D.Y.V.R.'s parental rights were in the best interest of the children. "After a statutory termination ground is satisfied, the court must also find that termination is in in the best interest of the child." *State in the Interest of D.B.*, 2016-0694, p. 10 (La.App. 4 Cir. 12/8/16), 206 So.3d 1021, 1027 (citations omitted). The purpose of involuntary termination proceedings "is to provide the greatest possible protection to a child… ." *State ex rel H.A.S.*, 2010-1529, p. 12 (La. 11/30/10), 52 So.3d 852, 859. The primary concern for the State and courts is to secure the best interest of the child by achieving permanency and stability for the child. *See Id.*, 2010-1529, p. 12, 52 So.3d at 860.

The record supports the finding that the termination of D.Y.V.R.'s parental rights is in the best interest of G.V.I. and J.V.I. Mr. Pichon, Ms. Casati, and the foster parents testified that the children's health is thriving both mentally and physically since being in custody of their certified foster family. The children's foster parents also testified that they understood the children's struggles with PTSD and stated their intentions to adopt the children.

The testimony and evidence presented to the trial court revealed that the children have endured multiple traumatic experiences. These include: experiencing domestic abuse between D.Y.V.R. and H.I.R; being separated from their mother for a two year period while living in the United States; living in a home where their father sexually abused their relative; and being sexually abused by their brother. Mr. Pichon stated that the children have a deep affection for their foster parents and call them "mom" and "dad." Ms. White, Ms. Casati, and Mr. Pichon agreed that the children have made substantial progress with their foster parents and are in desperate need of stability.

A review of the testimony indicates that the children have experienced permanency and stability in the foster parents' home and removal would not be in the children's best interest. *See State in the Interest of D.B.*, 2016-0694, p. 11, 206 So.3d at 1028. In light of the fact that D.Y.V.R. has not come to terms with her children's experiences with sexual abuse and that the children's foster parents have created a home in which they thrive, we find that the trial court's conclusion to terminate D.Y.V.R.'s parental rights is in the children's best interests. Accordingly, we find no manifest error in the trial court's ruling.

**Reunification**

D.Y.V.R. also asserts that DCFS failed to make diligent efforts to reunite her with the children. DCFS must provide "reasonable efforts" to reunite families after separation. *See State ex rel J.M.*, 2002-2089, p. 15 (La. 1/28/03), 837 So.2d 1247, 1256. Reasonable efforts are defined by the particular facts and circumstances of each case. La. Ch.C. art. 603(26) DCFS must exercise ordinary diligence and care to reunite a family with the child's health, care, and safety being a paramount concern. *Id.*

On two separate occasions, the children were placed into the custody of family members and friends with orders to return them to the Dominican Republic. Both placements resulted in the children being returned to DCFS' custody and ultimately being adjudicated in need of care. At one point, the children were placed with their paternal aunt, who was later arrested in conjunction with H.I.R's arrest, which resulted in the children's return to DCFS' custody. The children were placed in DCFS custody following the arrest of their father, H.I.R, and have remained with the same foster family for over two years.

After determining that D.Y.V.R. lives in the Dominican Republic, DCFS referred D.Y.V.R. to parenting classes and therapy sessions to address her mental health concerns.[9] D.Y.V.R. failed to take advantage of these services. DCFS also provided D.Y.V.R. with opportunities for her to visit with the children. Many of the visits would end early due to "non-engagement" between D.Y.V.R. and her children. After multiple hearings and child in need of care proceedings, the trial court determined that D.Y.V.R. failed to make reasonable efforts to comply with her case plan. The record is replete with evidence and testimony indicating that DCFS attempted to reunite D.Y.V.R. with her children. For the foregoing reasons, we find DCFS' efforts reasonable and find that this assignment of error lacks merit.

## CONCLUSION

G.V.I. and J.V.I. have been in the State's custody for over two years and have endured multiple hardships as a result of D.Y.V.R.'s and H.I.R.'s parental conduct. The children have been placed with various family members that resulted

---

[9] For example, Ms. Casati worked with D.Y.V.R. for a two year period to assist her with her mental health and accepting the results of the children's experiences with sexual abuse.

in instability and were ultimately returned into DCFS' custody. The testimony establishes that the children have found stability and permanence with their foster parents. We therefore find the trial court did not err in terminating D.Y.V.R.'s parental rights and certifying the children eligible for adoption. The totality of the testimony and evidence supports the trial court's ruling that termination of D.Y.V.R.'s parental rights is in the best interest of the children.

## DECREE

For the foregoing reasons, we affirm the trial court's June 22, 2023 judgment.

**AFFIRMED**