STATE OF LOUISIANA IN
THE INTEREST OF E.R.

\*     NO. 2022-CA-0754

\*

\*     COURT OF APPEAL

\*     FOURTH CIRCUIT

\*     STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2022-066-09-TR-E, SECTION "E"
HONORABLE Desiree Cook-Calvin, JUDGE
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge
Dale N. Atkins)

Lorena McPhate Lisi
Bureau of General Counsel
Department of Children and Family Services
1450 Poydras Street, Suite 1600
New Orleans, LA 70112

     COUNSEL FOR APPELLEE/DEPARTMENT OF CHILDREN AND
     FAMILY SERVICES

K. Brandon Cline
Mental Health Advocacy Services
1450 Poydras Street
Suite 1105
New Orleans, LA 70112

     COUNSEL FOR APPELLEE/E.R.

Douglas Lee Harville
The Harville Law Firm, LLC
As a Contract Attorney for:
LOUISIANA CINC APPELLATE PROJECT
P.O. Box 52988
Shreveport, LA 71135

     COUNSEL FOR APPELLANT/K.M.

**AFFIRMED**

**FEBRUARY 7, 2023**

*SCJ*
*RML*
*DNA*

This appeal involves the involuntary termination of parental rights.  On July 8, 2022, the State of Louisiana through the Department of Children and Family Services ("DCFS") filed an amended petition for termination of parental rights, seeking to terminate the rights of K.M., the biological father of E.R.[1]  Following a hearing, the trial court determined that DCFS proved by clear and convincing evidence the statutory grounds for termination of parental rights, under La. Ch. C. art. 1015(5), and that termination was in the best interest of the child.  K.M. now appeals the trial court's October 7, 2022 judgment terminating his parental rights. After review of the record, and in light of Louisiana law and jurisprudence, we find no manifest error in the trial court's determination, and we affirm the October 7, 2022 judgment.

---

[1] We use the initials of the minor child and the parent to protect the minor's identity and ensure the parties' privacy.  *See* Rule 5-2, Uniform Rules—Courts of Appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The child, E.R., was born on October 21, 2019, to a single mother, J.R., with no father indicated on the birth certificate. On November 20, 2019, E.R. became a patient at Children's Hospital in New Orleans, with an initial diagnosis of Failure to Thrive, due to an inability to gain weight.[2] In December 2019, E.R. came to the attention of DCFS based on a report of medical neglect and dependency. While E.R. was a patient in the hospital, the mother, J.R., displayed concerning behavior towards her child; hospital staff reported that J.R. appeared at times to be under the influence of a substance or suffering from psychotic episodes, and that she appeared unwilling or unable to provide care for E.R.

After receiving the report of medical neglect of E.R., DCFS filed a petition alleging E.R. was a child in need of care and seeking an instanter custody order. The trial court ordered E.R. to be placed in custody. Upon his discharge from Children's Hospital on February 14, 2020, E.R. was placed in custody with certified foster parents, with whom he has remained in continuous care and custody.

Subsequently, DCFS filed a petition for termination of parental rights against the mother, J.R. At an adjudication hearing, J.R. testified that K.M. is the biological father of E.R., and that she had informed him of her pregnancy. At the conclusion of that termination hearing, the trial court concluded that J.R. could not properly feed, support, or care for E.R., that DCFS had established grounds for termination

---

[2] E.R. was later diagnosed with Congenital Diarrhea Disorder, a gene deficiency that prevents the body from breaking down fats consumed from foods and liquids, and which requires significant attention to E.R.'s feeding, weight gain, and development.

of her parental rights, and that the best interest of E.R. was served by termination of J.R.'s parental rights. Consequently, on May 5, 2022, the trial court terminated J.R.'s parental rights.

Subsequently, based on J.R.'s testimony naming K.M. as the biological father, DCFS located and contacted K.M., who acknowledged having an intimate relationship with J.R., knowing that she was pregnant, and knowing he might be the father of E.R. K.M. later submitted to a DNA test, which confirmed he was E.R.'s biological father.

On July 8, 2022, DCFS filed an amended petition for termination of parental rights, seeking to terminate K.M.'s parental rights. DCFS alleged the statutory grounds for termination as abandonment, pursuant to La. Ch. C. art. 1015(5). On July 28, 2022, K.M. answered the petition and denied all allegations.

The termination hearing for K.M. was held over two dates, September 8 and 26, 2022. At the hearing, the trial court heard testimony from Darnell Maddox, the DCFS foster care worker for E.R.; Dr. Colleen LeBlanc, E.R.'s pediatric gastroenterologist; C.V., E.R.'s foster mother; Dr. Sebastian Del Corral, an expert witness in the field of clinical psychology of children and adults, infant mental health, and trauma; and K.M. At the conclusion of the hearing, the trial court allowed the parties five days to submit additional post-hearing arguments.

On October 7, 2022, the trial court rendered judgment finding that DCFS proved the statutory grounds for termination of K.M.'s parental rights, under La. Ch. C. art. 1015(5)(b)-(c), by establishing that K.M. failed to significantly contribute to

3

E.R.'s care and support, and that K.M. failed to maintain significant contact with E.R. by visiting or communicating with him for any period of six consecutive months. In addition, the trial court found that E.R. had been in continuous foster care since the age of four-months-old, that he formed significant attachments with his foster family with whom he had lived for thirty (30) months, and that based on E.R.'s medical needs and circumstances, termination of K.M.'s parental rights was in the best interest of E.R. Accordingly, the trial court terminated K.M.'s parental rights and declared E.R. eligible for adoption.

On October 19, 2022, K.M. filed timely notice of appeal of the trial court's judgment terminating his parental rights.

## DISCUSSION

On appeal, K.M. argues that the trial court erred in terminating his parental rights, because DCFS failed to show by clear and convincing evidence that K.M. abandoned E.R.

The trial court's judgment on the termination of parental rights is subject to the manifest error standard of review. *State in the Interest of C.F.*, 17-1054, pp. 10-11 (La. 12/6/17), 235 So.3d 1066, 1072. The appellate court reviews both prongs of the trial court's determination—whether the statutory grounds for termination have been established and whether termination of parental rights is in the child's best interest—under the manifest error standard. *Id*.

Louisiana courts recognize that the "[p]ermanent termination of the legal relationship existing between natural parents and children is one of the most drastic

actions the state can take against its citizens." *State in the Interest of A.L.D. and L.S.D.*, 18-1271, p. 4 (La. 1/30/19), 263 So.3d 860, 863.  The fundamental purpose of instituting involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for the child's welfare and needs, and to achieve stability and permanency for the child. *State in the Interest of A.S.*, 17-0028, p. 7 (La. App. 4 Cir. 5/10/17), 220 So.3d 179, 184 (quoting *State ex rel. J.A.*, 99-2905, pp. 8-9 (La. 1/12/00), 752 So.2d 806, 810).  The focus of the judicial proceedings is not whether the parent should be deprived of custody; "the primary concern of the courts and the state remains to determine the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the state." *A.L.D. and L.S.D.*, 18-1271, p. 4, 263 So.3d at 863 (citing *State ex rel. J.M.*¸ 02-2089 (La. 1/28/03), 837 So.2d 1247, 1254).

The State's paramount concern for the child's best interest is reflected throughout the Louisiana Children's Code, which, under certain circumstances, requires DCFS to pursue termination of parental rights, pursuant to La. Ch. C. art. 1004.1:

> The department shall file and pursue to judgment in the trial court a petition to terminate the parental rights of the parent or parents if the child has been in state custody for seventeen of the last twenty-two months, unless the department has documented in the case plan a compelling reason why filing is not in the best interest of the child.

The petition filed by DCFS must allege at least one of the statutory grounds for involuntary termination of parental rights provided in La. Ch. C. art. 1015.  The

judicial process of terminating parental rights involves a two-pronged inquiry: (1) DCFS must establish each element of at least one statutory ground for termination by clear and convincing evidence; and (2) after the trial court finds that a ground for termination exists, the trial court must determine that termination is in the best interest of the child. *Interest of C.F.*, 17-1054, p. 11, 235 So.3d at 1072; La. Ch. C. art. 1035 (providing the clear and convincing evidence burden of proof for termination). When the trial court finds that the alleged statutory ground(s) for termination has been proven by the clear and convincing standard required by La. Ch. C. art. 1035, and that termination is in the best interest of the child, then the trial court "shall order the termination of the parental rights of the parent against whom the allegations are proven." La. Ch. C. art. 1037(B). "The court shall enter written findings on both issues. The consideration of best interests of the child shall include consideration of the child's attachment to his current caretakers." La. Ch. C. art. 1037(B).

In this case, at the time of the termination hearing, E.R. had been in DCFS custody, with a certified foster family, for more than thirty months. DCFS had already pursued to judgment a petition to terminate the rights of the mother, J.R., pursuant to La. Ch. C. art. 1004.1. At her termination hearing, J.R. testified that K.M. is the father of E.R., providing this information for the first time. Based on her testimony, DCFS located and contacted K.M., who acknowledged that he could be E.R.'s father. K.M. then agreed to take a DNA test, which confirmed he is the biological father of E.R. Subsequently, DCFS amended the petition for termination

6

of parental rights naming K.M. as the father and seeking to terminate his parental rights, in accordance with La. Ch. C. art. 1004.1.

DCFS alleged the statutory grounds for termination of K.M.'s rights to be abandonment, under La. Ch. C. art. 1015(5)(b) and (c), which provide in pertinent part as follows:

The grounds for termination of parental rights are:

(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

At the termination hearing, the trial court heard testimony from several witnesses. Ms. Maddox, the DCFS foster care worker, testified that after locating and making initial contact with K.M. regarding paternity, she spoke with him on June 27, 2022. Ms. Maddox stated that, during that conversation, K.M. acknowledged having an intimate relationship with the mother, J.R., who told him E.R. was his child. Ms. Maddox then testified that K.M. firmly stated to her that he knew E.R. was his child. However, to Ms. Maddox's knowledge, K.M. had not paid any child support or provided any cards, gifts, clothing, or letters to E.R. from the time E.R. was placed in custody, in February 2020, to the filing of the petition to terminate K.M.'s parental rights, on July 8, 2022. In addition, Ms. Maddox testified

7

that she checked the Putative Father Registry and with the clerk of court in the parish of E.R.'s birth, and no acknowledgment of paternity had been filed.[3]

Ms. Maddox also testified to the relationship E.R. has developed with his foster family. Ms. Maddox stated that E.R. has been with the same family since February 14, 2020, and E.R. has strong attachments to the family, who have provided all necessary care for him.

Dr. Colleen LeBlanc, a pediatric gastroenterologist, testified that she has been E.R.'s primary gastroenterologist since February 2020. Dr. LeBlanc testified that E.R. is diagnosed with a congenital diarrhea disorder called DGAT-1 deficiency, which is a very rare genetic disease. In basic terms, Dr. LeBlanc stated that "whenever [E.R.] eats a significant amount of fat it causes severe diarrhea" which can result in severe malnutrition and dehydration. Dr. LeBlanc explained that the main treatment for E.R.'s condition is a very special diet that carefully monitors his fat intake, by measuring and weighing food and calculating the grams of fat in all of E.R.'s food. Dr. LeBlanc testified that E.R.'s foster parents bring him to all of his appointments, so that E.R. can be regularly monitored with checkups and blood work. Dr. LeBlanc further testified that E.R. has "been thriving" and "done fantastic" in the two and one-half years he has been in the care of his foster family.

C.V., E.R.'s foster mother, testified that she and her husband took custody of E.R. in February 2020, and they have one more son, of whom they took custody in

---

[3] The Louisiana Legislature created a putative father registry whereby "anyone who claims to be or is adjudicated to be the natural father of an illegitimate child can be identified as such by consulting the registry." *In re Adoption of B.G.S.*, 556 So.2d 545, 557 (La. 1990).

September 2020 and adopted in March 2021. C.V. testified regarding the close bond all family members have established with E.R., and regarding their careful regimen in consideration of E.R.'s medical condition. C.V. testified that she and her husband would like to adopt E.R. if he is freed for adoption.

Dr. Del Corral, certified as an expert in clinical psychology of children and adults, infant mental health, and trauma, testified that he was assigned in March 2021 to E.R.'s case, to provide evaluations, psychological treatment, and recommendations to the court. Dr. Del Corral testified that, since his assignment to this case, he had witnessed several interactions between E.R. and his foster parents, finding that E.R. was very comforted and relaxed in their presence, that the foster parents engage with and encourage E.R., and that E.R. has made significant positive progress while in their custody. Dr. Del Corral testified that, if E.R. were removed from his foster family and placed in custody with K.M., the disruption of attachment could impair his health and be detrimental to his well-being. Based on his evaluations and in his expert opinion, Dr. Del Corral testified it was in the best interest of E.R. for K.M.'s rights to be terminated and be freed for adoption.

K.M. testified that J.R. was pregnant while they were in an intimate relationship but that she told him he was not the father. However, sometime after the end of their relationship, J.R. told him that E.R. was his son. K.M. stated he did not believe J.R. because she had mental health problems and often lied to him. Regarding his intention to accept parental responsibility, K.M. testified that he was willing to learn how to care for E.R. and abide by all medical recommendations. In

cross-examination, K.M. testified that he has two adult children, with whom he does not currently have relationships, and he was once arrested for failure to pay child support for those children.

Based upon the foregoing testimony, as well as the DCFS reports received by the trial court, the trial court ruled to grant the termination of K.M.'s parental rights and issued written reasons for its ruling. The trial court noted that K.M. either knew or should have known of his paternity of E.R. based upon the mother's pregnancy during K.M.'s relationship with her and the fact that she later told him E.R. was his son. The trial court found that K.M. had enough evidence to have "taken timely steps to establish and/or confirm paternity" since E.R.'s placement in custody in February 2020 and before the petition to terminate was filed in July 2022. The trial court also found that E.R. had established attachments with his foster family, and that separating E.R. from the only family he knew would not be in his best interest. Based on these findings, the trial court concluded that (1) DCFS established by clear and convincing evidence that K.M. had failed to provide significant contributions to E.R.'s care and support, and failed to maintain significant contact with E.R. for any period of six consecutive months; and (2) it is in the best interest of E.R. that K.M.'s parental rights be terminated and E.R. be free for adoption.

In this appeal, K.M. argues that the trial court erred in finding that DCFS established either one of the alleged grounds for termination—failure to provide significant contribution or failure to maintain significant contact—by clear and convincing evidence. *See* La. Ch. C. art. 1015(5)(b)-(c). K.M. admits that he did

not have a relationship with E.R., that he knew E.R. could be his child from his relationship with J.R., and that J.R. had told him at one time that he was E.R.'s father. But, K.M. argues that J.R. often lied to him, so he did not know for certain that E.R. was his child. In addition, K.M. argues that, once he was contacted by DCFS regarding his paternity, he acted to assert his parental rights and assume responsibilities, but that DCFS made no attempts to reunite K.M. and E.R., never established a case plan, and never sought to establish visitation or support obligations.

DCFS argues it established that, despite knowing of J.R.'s pregnancy and learning from J.R. that E.R. was his child, K.M. demonstrated his intent to avoid parental responsibility by failing to provide any contribution to E.R.'s care or support and by failing to establish any contact or visitation with E.R. DCFS also argues that it followed the mandates of the Children's Code, under La. Ch. C. art. 1004.1, and held the best interest of E.R. as their paramount concern, by petitioning for the termination of K.M.'s rights in order to achieve stability and permanency for E.R. DCFS asserts that the record reflects that the statutory grounds for termination have been established by clear and convincing evidence and that termination of K.M.'s parental rights are in the best interest of E.R.

From our review of the record, the testimony at the termination hearing and the DCFS case reports prepared for the trial court, we find no manifest error in the trial court's determinations in the required two-prong inquiry.

First, we find the testimony clearly establishes that K.M. knew that J.R. was pregnant during their relationship; that he learned the child, E.R., was his son; and that he made no attempts formally or informally to establish a relationship with E.R. or provide for his care or support. K.M. has made no argument nor presented any evidence to dispute his failure to provide contributions or make significant contacts within the six consecutive months prior to the filing of the petition.

We find no merit to K.M.'s argument that DCFS failed to establish either ground of abandonment because it did not first establish a case plan, seek to establish support obligations, or set up visitation. This Court has previously held that a putative father's parental rights may be terminated under La. Ch. C. art. 1015 even "when the facts indicate that he may not know that his sexual relationship with a mother resulted in the birth of [his] child." *State in the Interest of D.B.*, 16-0694, p. 1 (La. App. 4 Cir. 12/8/16), 206 So.3d 1021, 1023.

In *D.B.*, as in this case, the child's father was not indicated on the birth certificate. Due to reports of abuse and neglect by the mother, D.B. was designated a child in need of care. The mother named K.T. as the father, but DCFS was unable to contact him and he remained absent while D.B. was in care. When the mother made no progress in her case plan, DCFS petitioned to terminate the mother's rights and those of K.T., for whom a curator was appointed. The trial court terminated the mother's rights but not those of the absent father, K.T., despite any evidence that he ever attempted to discover, contact, or parent his child. The DCFS appealed the trial court's denial of the termination of the father's parental rights, in order to allow for

D.B. to be free for adoption. The curator for K.T. argued on appeal that a parent's conduct must demonstrate an intent to permanently avoid parental responsibility and that a man who does not know of his paternity cannot form the requisite intent to abandon the child. This Court rejected that argument, finding that "[r]ather than requiring evidence of intent separate from the specified termination grounds, the statute clearly sets forth three grounds by which a parent demonstrates his intent to permanently avoid parental responsibility." *D.B.*, 16-0694, p. 5, 206 So.3d at 1025 (citing La. Ch. C. art. 1015(5)(a)-(c)). Finally, the Court also noted that while the "statutory law does not impose [an] affirmative duty for men to follow up with their sexual partners, in the absence of any effort by a potential father to learn if a sexual relationship has resulted in offspring, there is no basis in law for him to be entitled to the due process protections given to a father who has acknowledged his child and acted responsibly." *D.B.*, 16-0694, p. 11, 206 So.3d at 1028 (citing *B.G.S.*, 556 So.2d at 558). This Court found that the trial court erred in refusing to terminate the parental rights of K.T., reversed the trial court's judgment, and terminated the father's parental rights.

In this case, K.M. knew both of J.R.'s pregnancy during their relationship and, subsequently, of E.R.'s birth and his paternity, but K.M. never took any steps to acknowledge E.R. or establish any contact with him prior to the filing of the petition. Upon learning of K.M. from J.R.'s testimony, DCFS promptly made contact with K.M. regarding his paternity. We find no statutory duty requiring DCFS to take further steps to establish the relationship between the child and an absent father,

before filing a petition for termination, as required by La. Ch. C. art. 1004.1, that alleges facts establishing grounds for termination under La. Ch. C. art. 1015. Thus, we find that DCFS followed the statutory requirements for petitioning for the termination of K.M.'s parental rights. We further find no manifest error in the trial court's conclusion that DCFS proved by clear and convincing evidence the grounds for termination under La. Ch. C. art. 1015(5)(b) and (c).

As to the second prong of the trial court's inquiry, we find the record also supports the trial court's conclusion that termination of K.M.'s parental rights is in E.R.'s best interest. Dr. LeBlanc and Dr. Del Corral both testified that E.R. has thrived in his physical health and well-being while in the custody of the foster parents. C.V., the foster mother, testified regarding her understanding of E.R.'s medical condition and needs, described her family's strong, close bond with E.R. and stated their intention to adopt him. In consideration that K.M. has no past relationship with E.R. and no history of caring for E.R.'s needs, we agree with the trial court's conclusion that termination of K.M.'s parental rights is in the best interest of E.R.

## CONCLUSION

For the foregoing reasons, we find no manifest error in the trial court's October 7, 2022 judgment terminating the parental rights of K.M. and declaring E.R. eligible for adoption, and we affirm.

**AFFIRMED**

14