STATE OF LOUISIANA IN
THE INTEREST OF O.T.

  \*      NO. 2024-CA-0004

\*

      COURT OF APPEAL

\*

      FOURTH CIRCUIT

\*

      STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 27103-J, DIVISION "C"
Honorable Kim C. Jones, Judge Presiding
\* \* \* \* \* \*
**Judge Tiffany Gautier Chase**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge
Tiffany Gautier Chase)

Jane Hogan
ATTORNEY AT LAW
310 North Cherry Street
Hammond, LA 70401

      COUNSEL FOR APPELLANT/MOTHER, T.S.

Katherine Mara Dowling
DEPARTMENT OF CHILDREN & FAMILY SERVICES
Bureau of General Counsel
1450 Poydras Street, Suite 1600
New Orleans, LA 70112

      COUNSEL FOR APPELLEE/ DEPARTMENT OF CHILDREN &
      FAMILY SERVICES

Mary Mustaller McMillan
SOUTHEAST LOUISIANA LEGAL SERVICES
CHILDREN LEGAL SERVICES PROJECT
1340 Poydras Street, Suite 600
New Orleans, LA 70112

      COUNSEL FOR APPELLEE/ MINOR CHILD, O.T.

      **AFFIRMED**
      **MARCH 06, 2024**

*TGC*
*JCL*
*PAB*

Appellant, T.S., seeks review of the trial court's September 26, 2023 judgment terminating her parental rights and certifying the minor child eligible for adoption.[1] After consideration of the record before this Court and the applicable law, we affirm the trial court's judgment.

**Facts and Procedural History**

T.S. is the biological mother of O.T.[2] On June 13, 2022, the Department of Children and Family Services (hereinafter "DCFS") filed an Instanter Order, and an affidavit in support, seeking removal and provisional custody of O.T. The Instanter Order indicated that the minor child was in need of care after DCFS received allegations of neglect. Specifically, the Instanter Order stated that O.T. missed a significant amount of days at school; suffers from untreated health issues; T.S. is homeless; and T.S. has a history of drug abuse and suffers from mental illness.

---

[1] We utilize the initials of the parties to protect and maintain the privacy of the children involved in this proceeding. *See* Rule 5-1 and Rule 5-2, Uniform Rules, Courts of Appeal.

[2] T.S. is also the biological mother to a minor son who is currently in the custody of his uncle.

At the continued custody hearing the trial court determined that reasonable grounds exist to continue the custody of O.T. with the State of Louisiana (hereinafter "the State"). The State thereafter filed a petition seeking to have O.T. declared in need of care and T.S. answered the petition denying all allegations. The trial court adjudicated O.T. as a child in need of care and placed her in the custody of DCFS; thereafter, placing O.T. with a certified foster family. After a case review hearing, the trial court accepted DCFS's case plan for T.S. and approved the goal of reunification. The reunification case plan required T.S. to: (1) complete parenting classes, a psychological evaluation, mental health/substance abuse assessment with Metropolitan Human Service District and follow all recommendations including, family or group therapy and additional evaluations or medication regimen; (2) submit to random drug screens; (3) attend weekly visits with O.T. and monthly check-ins with DCFS; (4) maintain housing and provide a safe and stable home environment for O.T.; (5) obtain verifiable employment; (6) provide parental contributions in the amount of $25.00 per month; and (7) execute a consent to release information to allow DCFS to track her progress.

The trial court set a permanency hearing for May 3, 2023 which was subsequently moved to April 12, 2023.[3] Prior to the permanency hearing, the State filed a report with the court wherein it advised the trial court that it sought to modify its case plan goal from reunification to adoption. The State sought to terminate the parental rights of T.S. and certify O.T. eligible for adoption. After

---

[3] O.T. and T.S. filed a joint motion to consider placement with a relative in lieu of foster care. The trial court ultimately set the matter for a special setting date of April 12, 2023. The purpose of the special setting was to allow completion of a caregiver assessment and investigation of issues O.T. was having with visitation with T.S. The parties agreed to move up the previously scheduled permanency hearing from May 3, 2023, to April 12, 2023, so that all issues could be heard simultaneously.

hearing the testimony of O.T.'s psychiatrist, the DCFS case worker, the DCFS child welfare supervisor, and the office manager at Bethel Colony Women of the Well, (hereinafter "Bethel Colony"), the trial court approved the modification of the case plan goal. At the hearing, the trial court set the case for review on August 30, 2023, and noted that T.S. could continue to work towards the original case plan goal of reunification.

On July 7, 2023, DCFS filed a petition to terminate the parental rights of T.S. and M.T.[4] The petition alleges T.S. failed to provide significant contributions to O.T.'s care and support for six consecutive months and asserts that T.S. is not in substantial compliance with the reunification case plan. On September 14, 2023, a hearing was held and testimony was elicited from Dr. Charles Zeanah (hereinafter "Dr. Zeanah"), O.T.'s psychiatrist and director of the Tulane Conference of Assessment and Treatment Team; Brooklyn Danos (hereinafter "Ms. Danos"), DCFS foster care case manager; Katina Price (hereinafter "Ms. Price"), DCFS child welfare supervisor; T.S.; Mandy Jones (hereinafter "Ms. Jones"), officer manager at Bethel Colony; and Ambria Washington (hereinafter "Ms. Washington"), O.T.'s CASA volunteer.[5]

After a hearing on the merits, the trial court rendered judgment on September 26, 2023, terminating T.S.'s parental rights. The trial court's judgment further granted DCFS continued custody of O.T. This appeal followed.

---

[4] M.T. is the biological father of O.T. His termination of parental rights hearing was conducted separately from T.S. on October 18, 2023.

[5] CASA is the acronym for Court Appointed Special Advocate.

## Assignments of Error

T.S. asserts the following two assignments of error: (1) the trial court erred in finding that T.S. failed to substantially comply with the case plan, that DCFS provided reasonable efforts to achieve reunification, and that no reasonable expectation of significant improvement exists in the near future; and (2) the trial court erred in finding that termination of T.S.'s parental rights is in the best interest of the minor child.

## Standard of Review

This Court reviews a trial court's finding on the termination of parental rights under a manifest error standard of review. *State in the Interest of A.S.*, 2017-0028, p. 4 (La.App. 4 Cir. 5/10/17), 220 So.3d 179, 183. "[B]oth prongs of the trial court's determination—whether the statutory grounds for termination have been established and whether termination of parental rights is in the child's best interest…" are considered under the manifest error standard. *State in the Interest of E.R.,* 2022-0754, p. 4 (La.App. 4 Cir. 2/7/23), 357 So.3d 892, 895, *writ denied*, 2023-00346 (La. 4/12/23), 359 So.3d 24 (citation omitted).

## Termination of Parental Rights Principles

In cases involving the involuntary termination of parental rights, the two interests that must be balanced are (1) the rights of the parents and (2) the rights of the child. Our Supreme Court has emphasized the importance of these interests:

> The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship, *State in Interest of Delcuze,* 407 So.2d 707 (La.1981). However, the child has a profound interest, often at odds with those of his parents, in terminating parental

rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated.

*State ex rel. J.A.*, 1999-2905, pp. 7-9 (La. 1/12/00), 752 So.2d 806, 810-11 (internal citations omitted).

The termination of the legal relationship between a child and its natural parent "is one of the most drastic actions the state can take against its citizens." *State in the Interest of A.L.D.*, 2018-1271, p. 4 (La. 1/30/19), 263 So.3d 860, 863. "[T]he primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven." *State ex rel. J.A.*, 1999-2905, p. 9, 752 So.2d at 811.

Title X of Louisiana's Children Code governs the involuntary termination of parental rights and the certification of children for adoption. The purpose in instituting the involuntary termination of parental rights is to provide protection to a child whose parent is unwilling or unable to provide adequate care for the child's welfare and needs and to achieve stability and permanence for the child. *See* La. Ch.C. art. 1001; *State ex rel J.A.,* 1999-2905, p. 8, 752 So.2d at 811. DCFS may pursue the termination of parental rights pursuant to La. Ch.C. art. 1004, which

governs petitions for termination of parental rights.[6] The "process of terminating parental rights involves a two-pronged inquiry: (1) DCFS must establish each element of at least one statutory ground for termination by clear and convincing evidence; and (2) after the trial court finds that a ground for termination exists, the trial court must determine that termination is in the best interest of the child." *State in the Interest of E.R.,* 2022-0754, p. 6, 357 So.3d at 896. The best interest of the child consideration shall include the child's attachment to her current caretakers. *See* La. Ch.C. art. 1037(B).[7]

## Sufficiency of the Evidence

By her first assignment of error, T.S. attacks the sufficiency of the evidence presented to terminate her parental rights on three grounds: (1) substantial

---

[6] La. Ch.C. art. 1004(D) provides:

> D. The department may petition for the termination of parental rights of the parent of the child when any of the following apply:
>
> 1. The child has been subjected to abuse or neglect after the child is returned to the parent's care and custody while under department supervision, and termination is authorized by Article 1015(4)(j).
> 2. The parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful, and termination is authorized by Article 1015(4)(k).
> 3. The child has been abandoned and termination is authorized by Article 1015(5).
> 4. The child has been placed in the custody of the state and termination is authorized by Article 1015(6).
> 5. The child is in foster care because the parent is incarcerated and termination is authorized by Article 1015(7).
> 6. The child is in foster care and, despite diligent efforts by the department to identify the child's father, his identity is unknown and termination is authorized by Article 1015(10).

[7] If the trial court finds that the statutory ground(s) for parental termination have been proven by clear and convincing evidence and that the termination is in the best interest of the child, the trial court "shall order the termination of parental rights of the parent against whom the allegations are proven." *See* La. Ch.C. Art. 1037(B)(1). The trial court must also enter written findings on both issues. *See Id.*

compliance with the case plan; (2) reasonable efforts to achieve reunification; and (3) reasonable expectation of significant improvement. We will address each issue in turn.

## Case Plan Compliance

T.S. maintains that DCFS failed to prove, by clear and convincing evidence that she did not substantially comply with the case plan. DCFS filed its petition to terminate T.S.'s parental rights pursuant to La. Ch.C. art. 1015(4) and (5) which provides the grounds for the termination of parental rights. [8] The article provides, in pertinent part:

> (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> ***
> (b) As of the time of the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> ***
>
> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

---

[8] La. Ch.C. art. 1015 was revised during Louisiana's 2023 Legislative Session with an effective date of June 9, 2023. DCFS filed its petition for termination of parental rights on July 7, 2023. Thus, the 2023 version of La. Ch.C. art. 1015 applies. DCFS's petition incorrectly cites La. Ch.C. art. 1015(5) and/or (6) as the grounds for termination of parental rights based on the numbering of the previous version of La. Ch.C. art. 1015. However, a reading of the petition makes clear that the intended grounds for seeking termination of parental rights is under La. Ch.C. art. 1015(4) and/or (5) of the current version of La. Ch.C. art. 1015.

La. Ch.C. art. 1015(4)(b) and (5). DCFS alleges that T.S. did not substantially comply with the case plan because she fails to demonstrate improvements in addressing the needs of the minor child; exhibits behavior during visitations that continue to put the minor child at risk; fails to comply with the mental health treatment by not obtaining individual therapy as recommended; fails to contribute financially or provide basic necessities for the minor child; and does not have stable housing suitable for the minor child. At the time of the filing of the petition for termination of parental rights, the minor child had been in DCFS's custody with a certified foster family for thirteen months.

The trial court heard testimony from several witnesses at the termination hearing. Dr. Zeanah testified that O.T. was referred to the program because of the trauma she experienced while living with T.S. He stated that suspension of visitation with T.S. occurred because of O.T.'s intense reaction to the prospect of visiting with her mother. According to Dr. Zeanah, while O.T. tolerated supervised visits with her mother, she was adverse to being alone with T.S. O.T. also expressed her desire to remain with her foster family and Dr. Zeanah did not foresee a probability of change in O.T.'s behavior towards T.S. in the future. Dr. Zeanah's assessment of T.S. was that she lacks empathy towards her child and fails to fully comprehend the negative effects O.T. experiences while in her care. He rejected the suggestion that Bethel Colony would be a suitable living environment for O.T. because Bethel Colony's focus is on substance abuse recovery and not an environment conducive for raising a child.

Ms. Danos, the DCFS foster care case manager, testified that T.S. was in partial compliance with the case plan. During the pendency of this matter, T.S. made $175.00 in financial contributions but failed to provide other necessities for

O.T. Ms. Danos also testified that T.S. did not complete individual therapy as recommended by her psychological evaluation and desired to remain a resident of Bethel Colony. She described Bethel Colony as a strictly structured environment. Ms. Danos testified that T.S. does not have a source of income and works at Bethel Colony's thrift store in exchange for residing at the facility.

Ms. Price, the DCFS child welfare supervisor, testified that despite the availability of services since the beginning of the implementation of the case plan, T.S. did not begin compliance until after she entered Bethel Colony. Ms. Price further testified that due to the structured nature of Bethel Colony, T.S. is not required to perform tasks independently; nor does she display the ability to provide basic necessities for herself or O.T.

T.S. testified that she shared a typical mother-daughter relationship with O.T. She stated that she is capable of providing basic necessities for her daughter and that she is in compliance with the case plan. T.S. maintained that she has stable housing as she currently resides at Bethel Colony. T.S. indicated that she completed a rigorous inpatient treatment program and graduated to her current program which is a less restrictive recovery program. While she works at the thrift store in exchange for residing at the facility, T.S. does not receive financial compensation. T.S. believes that she can provide safe and stable housing for O.T., because O.T. would be able to reside at Bethel Colony. T.S. refutes the allegation that she did not make additional financial contributions.[9] She stated that her completion of the substance abuse assessment and the psychological evaluation proved that she is in compliance with parts of the case plan. While she has not

---

[9] T.S. testified that she instructed her brother to make additional financial contributions on her behalf.

completed individual therapy, failure to do so was because the appointment was not properly coordinated through Bethel Colony.

The trial court also heard testimony from Ms. Jones, the office manager at Bethel Colony, who testified regarding T.S.'s treatment program and her current progress. Ms. Washington, O.T.'s CASA volunteer, also testified and stated that O.T. often displayed feelings of sadness and anger when discussing T.S. and that O.T. developed a strong bond with the foster parents.

A review of the record indicates that although T.S. has completed portions of the case plan, she is not in substantial compliance. T.S. does not have a source of income nor has she completed individual therapy. Although T.S. resides at Bethel Colony, we agree with the experts, this is not a suitable environment to raise a child. Additionally, due to the extensively structured nature of Bethel Colony, questions remain regarding T.S.'s ability to independently remain sober and continue her mental health treatment without intervention. T.S. fails to demonstrate an ability to provide basic necessities and stability for O.T. As acknowledged by the trial court, T.S. has made efforts and improvements in her life. However, she has not substantially complied with the case plan despite being given more than thirteen months to complete the requirements. Accordingly, we find the trial court did not err in concluding that T.S. did not substantially comply with the case plan.

## Reunification

T.S. argues that DCFS did not make reasonable efforts to reunify her with O.T. DCFS must make reasonable efforts to reunite families after separation. *See State ex rel J.M.*, 2002-2089, p. 15 (La. 1/28/03), 837 So.2d 1247, 1256. Reasonable efforts are defined by the particular facts and circumstances of each

case. La. Ch.C. art. 603(26). DCFS must exercise ordinary diligence and care to reunite a family while considering the paramount concerns of a child's health, care and safety. *Id*.

The cumulative testimony of the witnesses is that T.S. fails to demonstrate a substantial change in her behavior which would justify reunification with her child. *See State in the Interest of C.M.*, 2021-0353, p. 10 (La.App. 4 Cir. 8/4/21), 325 So.3d 1148, 1155 (holding that in order to prevent the termination of parental rights, a parent must demonstrate a substantial change or modification of behavior that resulted in the State's removal of the child from the parent's home). T.S.'s abnormal behavior and lack of empathy towards O.T. contributed to Dr. Zeanah's recommendation to suspend visitation. DCFS began visitation coaching to assist T.S. during the visits and attempted to foster a bond between T.S. and O.T., all with the goal of reunification. The bond between T.S. and O.T. remains fractured mainly because T.S. fails to comprehend the emotional trauma O.T. endured while previously in her custody. The record is replete with testimony and evidence that DCFS aided T.S. by making reasonable efforts to support her in achieving reunification. Accordingly, we find the trial court did not err in its finding that DCFS made reasonable efforts to reunify T.S. with O.T.

### Expectation of Improvement

T.S. asserts the trial court erred in finding that there is no reasonable expectation that her conduct would improve in the near future. Proving lack of reasonable expectation of significant parental improvement is required by La. Ch.C. art 1036(D), which provides, in pertinent part:

> D. Under Article 1015(6), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by…

11

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

La. Ch.C. art. 1036(D)(3).[10] Several experts testified that T.S. fails to demonstrate the necessary behavioral changes needed to properly care for O.T. and fails to exhibit the ability to independently provide for herself or O.T. T.S. resides in a facility where her schedule and activities are systematically planned and strictly enforced. Although she works at Bethel Colony, she is not financially compensated for her work. T.S. testified that she intends to remain a resident of Bethel Colony for the foreseeable future. While Bethel Colony is a suitable living arrangement for T.S., the testimony at the termination hearing suggests that it is not a suitable place to raise children. T.S.'s unwillingness to seek other housing lends credence to her inability to provide adequate permanent housing for O.T. Accordingly, we find the trial court did not err in concluding that there is no reasonable expectation of significant improvement of T.S.'s conduct in the near future.

We find that the statutory grounds for termination of parental rights under La. Ch.C. art. 1015(4) and (5) were proven by clear and convincing evidence. DCFS presented evidence sufficient to satisfy two statutory grounds to terminate T.S.'s parental rights; namely, abandonment based on non-support and failure to substantially comply with the case plan. As such, we find no manifest error in the trial court's conclusion that DCFS established the statutory grounds for the termination of T.S.'s parental rights.

---

[10] La. Ch.C. art. 1036 became effective on May 15, 2018 and cites to the previous version of La. Ch.C. art. 1015. In referencing La. Ch.C. art. 1015(6), La. Ch.C. art. 1036(D) is referring to what is currently La. Ch.C. art. 1015(5).

## Best Interest of the Child

By her second assignment of error, T.S. argues the trial court erred in determining that termination of her parental rights is in the best interest of the minor child. "After a statutory termination ground is satisfied, the court must also find that termination is in the best interest of the child." *State in the Interest of D.B.*, 2016-0694, p. 10 (La.App. 4 Cir. 12/8/16), 206 So.3d 1021, 1027 (citations omitted). The purpose of involuntary termination proceedings "is to provide the greatest possible protection to a child… ." *State ex rel H.A.S.*, 2010-1529, p. 12 (La. 11/30/10), 52 So.3d 852, 859. The primary concern for the State and courts is to secure the best interest of the child by achieving permanency and stability. *See Id.*, 2010-1529, p. 12, 52 So.3d at 860.

The evidence and testimony presented at the termination hearing supports the trial court's finding that termination of T.S.'s parental rights is in the best interest of O.T. O.T. experienced difficulties while in the custody of T.S. including: an untreated urinary tract infection; missing over one-hundred days of school; homelessness; and severe constipation as a result of malnutrition. O.T. is experiencing permanency and stability in the care of her foster parents and we agree that removal would not be in her best interest. *See State in the Interest of D.B.*, 2016-0694, p. 11, 206 So.3d at 1028. Based on the record before this Court, we find the trial court's conclusion to terminate the parental rights of T.S. to be in O.T.'s best interest. Accordingly, we find the trial court's ruling was not manifestly erroneous.

## Conclusion

O.T. has been in the State's custody for more than a year yet she continues to endure post-traumatic stress as a result of T.S.'s conduct. She has found stability

and permanence with her foster parents, and is thriving in the environment. We therefore find the trial court did not err in terminating T.S.'s parental rights and certifying the minor child eligible for adoption. The totality of the evidence supports the trial court's ruling that termination of T.S.'s parental rights is in O.T.'s best interest.

## Decree

For the foregoing reasons, we affirm the September 26, 2023 trial court judgment.

**AFFIRMED**